UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SONYA DANAE SESSION,

    Plaintiff,

  v.              **DECISION AND ORDER**
                      18-CV-6253S
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____

  1.  Plaintiff Sonya Danae Session brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income ("SSI") under Title XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

  2.  Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") on January 22, 2015. (R.[1] at 10, 190). Plaintiff alleged disability beginning January 1, 2012, due to left knee arthritis, spine arthritis with bulging discs, sciatica (left side), right hand pain/numbness, and difficulty lifting her arm over her head. (R. at 208). Plaintiff's application was denied (R. at 84), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 112).

  3.  On May 25, 2017, ALJ Brian Kane held a hearing at which Plaintiff— represented by counsel—and Vocational Expert ("VE") Peter Manzi appeared and testified. (R. at 32-83). At the time of the hearing, Plaintiff was 47 years old (R. at 36,

---

[1] Citations to the underlying administrative record are designated as "R."

190), with an 11th grade education and a general equivalency degree (GED) (R. at 37, 210) and past work experience as a housekeeper and childcare worker. (R. at 50, 210).

4. The ALJ considered the case *de novo* and, on August 28, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 10). On January 5, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-6). Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on March 28, 2018. (Docket No. 1).

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 11, 15). Plaintiff filed a response on March 20, 2019 (Docket No. 16), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than

---

[2] The ALJ's August 28, 2017 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

2

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based

> solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 22, 2015. (R. at 12). At step two, the ALJ found that Plaintiff has the following severe impairments: left knee degenerative joint disease, lower back degenerative disc disease and secondary depressive disorder. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets

or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. (R. at 14). At step four, the ALJ found Plaintiff is unable to perform past relevant work as a housekeeper or childcare worker. (R. at 18). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 19). Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 20).

13. Plaintiff argues the Commissioner's denial of benefits is not supported by substantial evidence because (1) the ALJ did not consider all of Plaintiff's limitations in the RFC determination; and (2) the ALJ failed to properly evaluate the medical opinion evidence of record. (Docket No. 11 at 16-28). For the reasons that follow, these arguments are unavailing.

14. Plaintiff first charges that the ALJ failed to conduct a "proper functional analysis" and "cherry-picked evidence to suggest Plaintiff was more functional." (Docket No. 11 at 21). Specifically, Plaintiff claims that "the ALJ ignored medical evidence that Plaintiff required a cane to stand or walk" and "ignored evidence that Plaintiff was limited in climbing stairs." Id. at 20.

15. A claimant's RFC reflects "what an individual can still do despite his or her limitations." Desmond v. Astrue, 2012 U.S. Dist. LEXIS 179805, *14, 2012 WL 6648625, *5 (N.D.N.Y. Dec. 20, 2012) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC, "the ALJ considers a claimant's physical abilities, mental

abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." Id. (citing 20 C.F.R. § 404.1545(a)).

16. Here, with respect to Plaintiff's use of a cane and ability to ambulate, the ALJ specifically considered Plaintiff's December 2011 arthroscopic left knee surgery and subsequent treatment. (R. at 15-17).

17. The ALJ found that following knee surgery, Plaintiff continued to have "pain and difficulty ambulating." Id. Plaintiff's pain was treated with medication and corticosteroid injections to the knee. However, Plaintiff experienced side effects from the injections and the ALJ noted that treatment records "indicate that [Plaintiff's] compliance [with] pain treatment has been 'poor.'" Id.

18. Plaintiff was "also prescribed physical therapy and aqua therapy" to treat her knee impairment, but the ALJ found that "[e]vidence indicates that [Plaintiff] is not always compliant with treatment." Id.

19. The ALJ also discussed Plaintiff's use of a cane, noting "[Plaintiff] was prescribed a cane due to left knee pain and she reported that she uses the cane to walk long distances or on rough ground." (R. at 15).

20. Plaintiff "used a cane and a brace on the left knee" in May 2015, when examined by consultative internist Dr. Toor. Id. As the ALJ indicates, "Dr. Toor observed that [Plaintiff] had a limping gait on the left" both with and without the cane. Id., R. at 486.

21. However, when Plaintiff presented for neuromuscular and electrodiagnostic consultation in August 2015, "her gait was normal and she was able to walk on her heels, toes and tandem walk." (R. at 15-16, 811-812). Plaintiff also demonstrated full (5/5)

6

strength in the upper and lower extremities during both consultative examinations. (R. at 487, 811-12).

22. Based on this record, the ALJ found that Plaintiff's left knee degenerative joint disease is a severe impairment that "result[s] in walking and standing limitations." (R. at 13). The ALJ also determined that "[Plaintiff] is independent in ambulation." Id. Accordingly, the ALJ found Plaintiff retains the RFC to perform sedentary work. (R. at 14).

23. Plaintiff contends this RFC is not supported by substantial evidence but fails to explain where the ALJ's logic falters. Plaintiff offers no explanation of how use of a cane or a reported inability "to climb stairs without the assistance of the upper body" (R. at 360) would preclude her from doing sedentary work. Neither does Plaintiff provide any evidence that these limitations would significantly erode the available occupational base for such work.

24. Instead, Plaintiff contends that remand is warranted because "there was evidence supporting a non-exertional limitation climbing stairs, and an exertional limitation walking without a cane." (Docket No. 11 at 21).

25. This argument is unavailing. Remand is not warranted simply because some evidence supports an alternative (more favorable) RFC determination, as Plaintiff suggests. Rather, the crucial question is whether the ALJ's determination is supported by substantial evidence and free of legal error. 42 U.S.C. § 405(g); Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997).

26. This Court finds no deficit in the ALJ's discussion of the record, and further finds the evidence to be consistent with the ALJ's conclusion that "[Plaintiff has lifting,

carrying, standing and walking limitations which allow her to perform work at a sedentary residual functional capacity." (R. at 17). Therefore, Plaintiff's first argument fails.

27. Plaintiff next maintains that the ALJ failed to properly evaluate medical opinion evidence. (Docket No. 11 at 21-29). Specifically, Plaintiff argues that the ALJ "improperly rejected the opinion [of] consultative examiner Dr. Toor" and instead "relied on his lay opinion" to determine that Plaintiff is not disabled. Id. at 21, 26.

28. To be sure, generally, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dailey v. Astrue, 2010 U.S. Dist. LEXIS 122892, 2010 WL 4703599, *11 (W.D.N.Y. Oct. 26, 2010) (internal quotation omitted), report and recommendation adopted, 2010 U.S. Dist. LEXIS 122893, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010).

29. However, the ALJ's opinion need "not perfectly correspond with any of the opinions of medical sources cited in his decision," and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (summary order); see also O'Neil v. Colvin, 2014 U.S. Dist. LEXIS 153872, 2014 WL 5500662, *6 (W.D.N.Y. Oct. 30, 2014) ("the ALJ's RFC finding need not track any one medical opinion").

30. In doing so, "[t]he [ALJ] is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). Ultimately, "[g]enuine conflicts in the medical evidence are for the [ALJ] to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

31. On May 1, 2015, Dr. Harbinder Toor performed a consultative examination of Plaintiff whose chief complaints were chronic pain in her left knee, which Plaintiff rated as 9/10 on a 1-to-10 pain scale, and constant lower back pain, which Plaintiff reported as 10/10 on the pain scale. (R. at 484-488).

32. Dr. Toor observed Plaintiff "appeared to be in moderate pain" and noted Plaintiff "does daily cooking, cleaning, laundry, and shopping," tends to her own personal hygiene, reads, and watches TV. (R. at 484-85).

33. As the ALJ discussed (R. at 15), Dr. Toor observed that Plaintiff exhibited an abnormal gait and some tenderness and ROM restrictions in the knees, however, she demonstrated 5/5 strength in the lower extremities. (R. at 487).

34. Dr. Toor opined that Plaintiff had "moderate to severe limitation standing, walking, bending, and lifting" as well as "moderate limitation sitting for a long time." (R. at 488). Dr. Toor also found Plaintiff "has moderate limitations pushing, pulling, and reaching with the right shoulder" and "[s]he should avoid irritants or other factor[s] which can exacerbate her asthma." Id.

35. Contrary to Plaintiff's allegation (Docket No. 11 at 21), the ALJ did not reject Dr. Toor's opinion. Rather, the ALJ accorded the opinion "some weight," explaining that Dr. Toor's assessment "is general and does not provide the specific number of hours [that Plaintiff] could perform these functions in an 8-hour workday." (R. at 18).

36. In determining what weight to grant to Dr. Toor's opinion, the ALJ considered the entire record, some of which was inconsistent with the assessment of the consultative examiner. (R. at 15-18).

9

37. As previously discussed, the ALJ noted that when Plaintiff underwent neurological testing by Dr. David Herrmann on August 27, 2015, "this time [Plaintiff's] gait was normal and she was able to walk on her heels, toes and tandem walk." (Docket No. 9 at 16, citing R. at 813). Muscle strength in all extremities, including knee flexion and knee extension was again measured as 5/5, and there is no indication that Plaintiff used a cane or other assistive device at this appointment. (R. at 784-815).

38. The ALJ also considered Plaintiff's history of noncompliance with prescribed treatment. (R. at 16). As the ALJ points out, Plaintiff has "been prescribed physical therapy and aqua therapy [but] [e]vidence indicates that [Plaintiff] is not always compliant with treatment." Id.

39. The record supports this evaluation. On October 9, 2014, Plaintiff's primary care physician, Dr. Richard Kennedy, assessed Plaintiff's poor compliance and noted he had "[d]iscussed that she continues to no show appointments I make for her." (R. at 343). Dr. Kennedy continued: "I cannot in good faith keep making appointments that she no show waisting [sic] the consultants available time." Id.

40. On November 6, 2014, Dr. Kennedy wrote "It looks like she didn't keep the pain clinic app[ointment]" and added this is "the 3rd pain center I attempted to get her into." (R. at 426). Dr. Kennedy's records also indicate that in recent months, Plaintiff had "No[-]showed" for two pain clinic appointments, two EMG appointments, an appointment with an orthopedist, as well as a rheumatology appointment. (R. at 426).

41. On April 24, 2015, Dr. Kennedy couldn't find lab results from tests Plaintiff claimed to have gotten done. (R. at 565). The record states: "I ordered lab on 11/6/14,

12/8/14, 2/27/15, 3/27/15 visits, and as best as I can tell she hasn't gotten it." Id. Dr. Kennedy added, "[Plaintiff] has said in the past she has gotten lab when she didn't." Id.

42. Plaintiff does not contest these reports of noncompliance with prescribed treatment, nor does she indicate the ALJ erred in finding that Plaintiff is "independent in ambulation" (R. at 13). Likewise, Plaintiff does not argue with the ALJ's finding that Dr. Toor's assessment "is general and does not provide the specific number of hours [that Plaintiff] could perform these functions in an 8-hour workday" (R. at 18).

43. Nevertheless, Plaintiff argues that the ALJ was obligated to give Dr. Toor's opinion controlling weight and that failure to do so is reversible error. Id. at 25 ("In failing to give [Dr. Toor's] opinion controlling weight, the ALJ's decision was not supported by substantial evidence.") Even if this Court were to agree that Dr. Toor's opinion should be controlling, Plaintiff fails to articulate how the opinion is inconsistent with finding that Plaintiff retains the RFC to perform sedentary work.

44. Plaintiff claims that "the vocational expert testified that certain limitations in standing, bending, lifting, or reduced balance, would preclude employment" and maintains that "the ALJ never provided the more specific limitations to the vocational expert." (Docket No. 11 at 25, citing R. at 54). However, Plaintiff's description of the VE's hearing testimony is inaccurate.

45. Despite Plaintiff's claim, the VE did not testify that "certain limitations in standing, bending, lifting, or reduced balance would preclude employment," as Plaintiff avers. (Docket No. 11 at 25).

46. Rather, the VE testified that such an individual who was *further limited* to sitting, standing, and walking for a combined total of no more than 6.75 hours in an 8-

11

hour workday would be unable to sustain full-time employment. (R. at 53-54). The VE's testimony is clear that the reason there would be no jobs for the hypothetical individual described by Plaintiff's attorney is that the proposed active time constraints (totaling a mere 6.75 hours) "doesn't add up to an eight-hour day." Id.

47. Plaintiff's next claim, that the ALJ "never provided the more specific limitations to the vocational expert" is also misleading.

48. Upon questioning by the ALJ, the VE testified that an individual limited to a full range of sedentary work could perform jobs such as that of an order clerk or an addresser/mailroom clerk, adding "there are many other examples." (R. at 51).

49. Next, the ALJ asked whether any work would be available for an individual who had additional limitations, including:

> can occasionally lift and carry ten pounds and frequently lift and carry ten pounds, can stand or walk two hours, at least two hours, can sit about six hours in a workday. She could be allowed to stand for 1 to 2 minutes after sitting for 30 to 45 minutes and be allowed to sit for 1 to 2 minutes after 30 minutes. Can also push or pull ten pounds. Can occasionally climb ramps and/or stairs. Can balance or stoop. Can rarely kneel, crouch, or crawl. Can never climb ladders, ropes, or scaffolds […] [a]nd would have to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.

(R. at 51-52).

50. In response, the VE testified that the hypothetical individual would still be able to perform as an order clerk — DOT 209.567-014, with 18,468 jobs in the national economy — or an addresser — DOT 209.587-010, with 30,307 jobs in the national economy. (R. at 52).

51. Ultimately, Plaintiff has simply not met her burden. Here, the ALJ found Plaintiff's left knee degenerative joint disorder to be a severe impairment that limits Plaintiff's RFC to sedentary work.

52. Although Plaintiff disagrees with the ALJ's decision, she fails to demonstrate that it is contrary to the weight of the evidence. See Brault v. SSA, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder *would have to conclude otherwise*.") (emphasis in original; internal quotations omitted).

53. For the foregoing reasons, this Court finds that the ALJ's decision is supported by substantial evidence. Therefore, remand is not warranted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated: October 1, 2019
Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge

13